**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:22-CR-450 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| | : | |
| MATTHEW J. TURNIPSEEDE, | : | **MOTION TO VACATE SENTENCE UNDER** |
| | : | **28 U.S.C. § 2255** |
| Defendant. | : | |

Mr. Matthew Turnipseede was sentenced to a term of imprisonment, which exceeded his proper guideline range. His counsel did not object to this Guideline range. Had his Guideline range been properly calculated, Mr. Turnipseede would have been able to appeal his sentence. Therefore, Mr. Turnipseede respectfully asks this Court to vacate his sentence and resentence him using the proper Guideline range, which will allow Mr. Turnipseede to appeal his sentence. A detailed explanation of the constitutional violation and relief sought is provided in the attached memorandum.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar:  0051928

*s/ Abigail Akrong*
ABIGAIL AKRONG
Attorney at Law
Kentucky Bar: 100451
10 East Commerce Street, Suite 230
Youngstown, OH 44503
Phone: (330) 746-6399
E-mail: Abigail_akrong@fd.org

**MEMORANDUM**

## I.    Introduction

Mr. Matthew Turnipseede was sentenced to a term of imprisonment, which exceeds his proper Guideline range. Because of this error, he was unable to appeal his sentence, because his plea agreement contained an appellate waiver. Mr. Turnipseede requests an evidentiary hearing to resolve any factual disputes and asks the Court to vacate his sentence and resentence him using the proper Guideline range.

## II.    Background

Mr. Turnipseede was charged with twelve counts of wire fraud and one count of mail fraud. R. 1: Indictment, PageID #: 1–16. He pled guilty to four counts of wire fraud, and the government moved to dismiss the remaining counts under a plea agreement. Minutes of proceedings, 11/22/2024; *see* R. 23: Plea Agreement.

His plea agreement provides a summary of the factual basis for Mr. Turnipseede's convictions. It explains that Mr. Turnipseede controlled Turnipseede Betting Companies. R. 23: Plea Agreement, PageID #: 106. In short, Mr. Turnipseede ran a sports betting company. Investors paid the company, and Mr. Turnipseede purportedly bet that money on various sporting events. Instead, he used some of that money to "perpetuate the scheme by using investor money to maintain the business and seek new sources of funds, to pay off earlier investors, and fund personal expenses." R. 23: Plea Agreement, PageID #: 108. Mr. Turnipseede ran this company for approximately 8 years. In total, Mr. Turnipseede induced investors to invest a total of approximately $8,458,694 in the company. R. 23: Plea Agreement, PageID #: 108. He was indicted on twelve charges of wire fraud and one charge of mail fraud in August 2022. R. 1: Indictment.

His trial counsel obtained a plea agreement, which agreed to dismiss certain of the charges, agreed to an offense level calculation, and waived his right to appeal most of his rights. *See* R. 23: Plea Agreement. The plea agreement included a stipulated guideline computation. *See* R. 23: Plea Agreement, PageID #: 97–98. It stated that the parties agreed that Mr. Turnipseede's offense level, before acceptance of responsibility was 27. R. 23: Plea Agreement, PageID #: 97–98. Despite this stipulated guideline calculation, the plea agreement allowed the parties to ask for whatever sentence seemed appropriate. R. 23: Plea Agreement, PageID #: 98. It also explained that the parties disagreed about several possible specific offense characteristics, specifically, whether his offense level should be enhanced for using sophisticated means or a special skill. R. 23: Plea Agreement, PageID #: 98. The parties also disputed whether Mr. Turnipseede was eligible to receive the 2-level deduction for being a zero-point offender. R. 23: Plea Agreement, PageID #: 98.

The agreement waived many of Mr. Turnipseede's rights. Notably, it waived Mr. Turnipseede's right to challenge the district court's decision regarding the disputed enhancements. R. 23: Plea Agreement, PageID #: 98–99. It, however, permitted Mr. Turnipseede to challenge any sentence above his Guideline range or statutory maximum and permitted him to bring a collateral attack for ineffective assistance of counsel or prosecutorial misconduct. R. 23: Plea Agreement, PageID #: 99.

After Mr. Turnipseede pled guilty, the Court ordered probation/pretrial to prepare a presentence investigation report ("PSR"). This PSR largely agreed with the parties' calculation and noted the parties disputed special offense characteristics. The PSR, seemingly for the first time, identified money that Mr. Turnipseede and the company returned to investors during the

course of the scheme. His PSR explains that the company returned the following amounts to investors throughout the course of the company's life:

- $253,000 in 2015
- $1,100,000 in 2016
- $951,000 in 2017
- $935,000 in 2018
- $651,000 in 2019
- $982,000 in 2020
- $342,000 in 2021

*See* PSR, Pages 4–5. Counsel filed, under seal, Mr. Turnipseede's objections and Sentencing Memorandum, with exhibits that included letters from his children and his medical records. R. 30: Objections and Sent'g Mem. This document addressed the parties' disputed specific offense characteristics and included objections to some factual statements. R. 30: Objections & Sent'g Mem. The government also submitted a sentencing memorandum. R. 32: Gov't Sent'g Mem.

At Mr. Turnipseede's sentencing hearing, the Court imposed the two-level sophisticated means enhancement, declined to impose the two-level use of a special skill enhancement, and declined to impose the two-level reduction for being a zero-point offender. R. 36: Sent'g Tr., PageID #: 452–54. This made Mr. Turnipseede's offense level, after acceptance of responsibility 26. R. 36: Sent'g Tr., PageID #: 470. With a total offense level of 26 and criminal history category I, Mr. Turnipseede's Guideline range was 63 to 78 months. R. 36: Sent'g Tr., PageID #: 477.

Mr. Turnipseede's counsel asked for a downward variance. Counsel asked for a sentence between 12 and 18 months. R. 36: Sent'g Tr., PageID # 456. With a sentence of 12 to 18 months, Mr. Turnipseede could receive a potential sentence of home confinement. R. 36: Sent'g Tr., PageID #: 456. In explaining why such a sentence was appropriate, counsel noted that the sentences in white collar cases are largely driven by the loss amount. R. 36: Sent'g Tr., PageID #: 456. Counsel specifically noted that because of this type of case, Mr. Turnipseede would not

receive credit, such that even if the loss amount was lower, it would not have affected Mr. Turnipseede's Guideline range. R. 36: Sent'g Tr., PageID #: 456–57. One victim spoke at Mr. Turnipseede's sentencing. R. 36: Sent'g Tr., PageID #: 464–66. Then the government asked the Court to impose $4,731,165.10 in restitution. R. 36: Sent'g Tr., PageID #: 467. It explained that the total principal in this case was approximately $7.4 million, which should have correlated to the principal invested that was not paid back. R. 36: Sent'g Tr., PageID #: 467. It did not put on the record how it came to this calculation nor did it explain why these credits were not used in calculating Mr. Turnipseede's loss amount and corresponding offense level. Then, the government requested a sentence within Mr. Turnipseede's guideline range. R. 36: Sent'g Tr., PageID #: 471.

Ultimately, the Court sentenced Mr. Turnipseede to a 65-month term of imprisonment on all four counts to be followed by three years of supervised release. R. 33: Judgment, PageID #: 430.

Following sentencing, Mr. Turnipseede did not file an appeal, because his plea agreement foreclosed such a request. In July 2025, well after the deadline for filing an appeal passed, Mr. Turnipseede asked counsel to withdraw, which they did. R. 37: Motion to Withdraw. This Court then appointed the Federal Public Defender's Officer to represent Mr. Turnipseede. Non-document Order, 07/17/2025. Counsel now files this petition on Mr. Turnipseede's behalf.

### III.  Grounds for Relief

Under 28 U.S.C. § 2255, this Court "shall vacate and set the judgment aside" if it finds "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt

hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.*

### A. Mr. Turnipseede's counsel was ineffective when they failed to object to the incorrect Guideline calculation.

The constitutional right to counsel guarantees the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant must make two showings to establish ineffective assistance. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, and "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case," *id.* at 693. Mr. Turnipseede's counsel provided ineffective assistance, to his prejudice, by failing to correctly calculate his Guideline range or correct the Court when it relied on an improper Guideline range.

The Sixth Circuit has held "counsel's failure to object to an error at sentencing or failure to raise a viable argument that would reduce his client's sentence may constitute deficient performance." *McPhearson*, 675 F.3d at 559; *United States v. Thomas*, 38 F. App'x. 198, 203 (6th Cir. 2002) ("Failure to move for a sentencing decrease may constitute ineffective assistance of counsel."); *Garcia v. United States*, 205 F.3d 1340, 2000 WL 145358 at *1 (6th Cir. Feb. 2, 2000) (same); *United States v. Breckenridge*, 93 F.3d 132 (6th Cir. 1996); *see also United States v. Soto*, 132 F.3d 56, 58-59 (D.C.Cir.1997) (failure to move for a viable sentencing decrease may constitute deficient performance).

Here, the issue is that counsel failed to (1) agree to the proper Guideline calculation in Mr. Turnipseede's plea agreement, and (2) object to the offense level as calculated in Mr.

6

Turnipseede's PSR. Mr. Turnipseede's plea agreement calculated his loss amount at $8,458,694, but it did not mention the payments made to investors during the scheme. His PSR calculated the same loss amount, but it included the payments made to investors. The total amount paid to investors was $5,214,000.[1] If this amount had been excluded from Mr. Turnipseede's calculated loss amount, his loss amount would have become $3,244,694.[2] With this calculation, the applicable specific offense characteristic under U.S.S.G. § 2B1.1(b)(1) would have decreased.

This Court must determine whether Mr. Turnipseede's counsel's representation fell below an objective standard of reasonableness. Generally, courts presume that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 687. But the Court must still make "an independent judicial evaluation of counsel's performance to determine whether counsel acted reasonably under all the circumstances." *United States v. Frost*, 612 F. Supp. 2d 903, 908 (N.D. Ohio 2009) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480–81 (2000)). Here, counsel erred by failing to correctly calculate Mr. Turnipseede's loss amount and corresponding Guideline calculation.

Sixth Circuit precedent explains that, even in a Ponzi scheme, an individual's loss amount should be reduced by the value of payments may to investor victims. U.S.S.G. § 2B1.1 defines loss as "the greater of actual loss or intended loss," where actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense" and intended loss is "the pecuniary harm that the defendant purposely sought to inflict, and includes intended pecuniary harm that would have been impossible or unlikely to occur." U.S. Sent'g Guidelines Manual, § 2B1.1, Notes to Table (A), (C)(i), (C)(ii). The Application Notes further expound on this definition. Application Note 3(D)(i)

---

[1] 253,000+1,100,000+951,000+935,000+651,000+982,000+342,000 = 5,214,000
[2] 8,458,694-5,214,000=3,244,694. If the Court calculates the total by adding and subtracting the amounts listed in the PSR at paragraph 9, the total loss is $2,741,000. *See* PSR at ¶ 9.

directs that "loss shall be reduced by . . . the money returned." U.S.S.G. § 2B1.1, App. Note 3(D)(i). In Application Note 3(E)(iv), the Commission provides a special rule for Ponzi and other fraudulent investment schemes:

> In a case involving a fraudulent investment scheme, such as a Ponzi scheme, loss shall not be reduced by the money or value of the property transferred to any individual investor in the scheme in excess of that investor's principal investment.

U.S.S.G. § 2B1.1, Application Note 3(E)(iv). Mr. Turnipseede operated such a scheme, so the question remains whether Mr. Turnipseede's estimated loss could or should have been reduced by the amounts returned to investors. Sixth Circuit precedent says yes.

In 2014, the Sixth Circuit, in a published case, concluded that a district court erred when it failed to reduce a defendant's loss figure by the value of the payments made to investor victims in perpetuating a Ponzi scheme. *United States v. Snelling*, 768 F.3d 509, 515 (6th Cir. 2014). In that case, the defendant challenged his Guideline range calculation. That defendant had been convicted of mail and wire fraud among other charges for his role in an investment scheme which defrauded investors of approximately $9 million. *Id.* at 510. His plea agreement left open the potential to receive credit for money returned to victims during the scheme; his PSR did not. *Id.* at 511. The defendant objected to the PSR's failure to credit his loss with the money returned to investors. *Id.* The district court overruled the objection. *Id.* Because of this error, the defendant's Guideline range became 121-151 months, instead of the defendant's argued range of 97 to 121 months. *Id.* The Court explained that the Sentencing Commission did not want any one victim's gain to be used to offset the loss of another. The Court specified that the money paid back to investors needed to be credited towards the defendant's loss because the money was used to perpetuate the Ponzi scheme, not pay any one investor back, noting:

8

> The new investors did not pay the earlier investors. New investors paid Snelling in order to participate in his investment scheme and then Snelling, who had control of the funds at that point, paid some of it to the earlier investors in order to perpetuate the Ponzi scheme.

*Id.* at 514. Thus, Sixth Circuit precedent states that an individual's loss amount should be decreased by the amounts paid back to investors to continue the scheme.

Mr. Turnipseede's loss amount should have been decreased under *Snelling's* holding. Mr. Turnipseede acknowledges that counsel objected to other specific offense characteristics, which impacted Mr. Turnipseede's offense level calculation. The loss amount calculation, however, could have been reduced if counsel had simply raised the issue. Counsel instead, incorrectly, stated that this case is the type where the loss amount does not receive credits and a lower loss amount would not have impacted his Guideline range. R. 36: Sent'g Hr'g Tr., PageID #: 456–57. But Mr. Turnipseede's case should have received credits.

*Snelling* remains good law in the Sixth Circuit, and it provides that in investment schemes, like Mr. Turnipseede's, the loss amount must be credited by the amount paid to investors. Even if counsel was unaware of the amounts paid to investors at the time of the plea agreement, they should have noted the listed amounts once they received Mr. Turnipseede's PSR. Both the Indictment and Plea Agreement, however, explain that the investors' money was used to perpetuate the scheme by helping to maintain the business and seek new sources of funds, pay off earlier investors, and fund Mr. Turnipseede's personal expenses. *See* R. 1: Indictment, PageID #: 4–5, R. 23: Plea Agreement, PageID #: 107–08. Then, the PSR clarified the amounts of money paid to investors to further perpetuate the scheme. *See* PSR, Pages 4–5. Further, the government requested restitution that purportedly reflected credits using § 2B1.1 but claimed the loss amount should be

9

the principal that had not been paid back. *See* R. 36: Sent'g Hr'g Tr., PageID #: 467.[3] This is contrary to the holding of *Snelling*. Thus, Mr. Turnipseede's actions fall within the ambit of *Snelling's* holding, and counsel should have objected to the loss amount on this basis. Instead, counsel off-handedly concluded that it would not have made a difference.

Had counsel objected to the loss amount, Mr. Turnipseede's offense level would have decreased. Thus, there is a reasonable probability that his sentence also would have decreased, or he could have appealed the Court's decision to impose a sentence above his Guideline range. Based on a total loss amount of $8,458,694, Mr. Turnipseede's offense level received an 18-level enhancement. *See* PSR at ¶ 41; U.S.S.G. § 2B1.1(b)(1)(J). If Mr. Turnipseede's counsel had objected to the loss amount, his loss amount would have decreased to $3,244,694. This correlates to a loss amount that is greater than $1,500,000 but less than $3,500,000, yielding a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I). With a total offense level of 26 and criminal history category I, his Guideline range was 63 to 78 months. The Court sentenced him to 65 months, towards the low-end of the Guideline range. If he had received credit for his loss amount, Mr. Turnipseede's offense level would have become 24. With a total offense level of 24 and criminal history category I, his Guideline range would have been 51 to 63 months. Mr. Turnipseede's imposed sentence of 65 months exceeds this Guideline range. R. 33: Judgment, PageID #: 430. Furthermore, the Supreme Court has concluded that when a defendant is sentenced under an incorrect guideline range, the error alone is likely enough to show reasonably probability of a different outcome absent the error. *See Molina-Martinez v. United States*, 578 U.S. 189, 198

---

[3] The government requested $4,731, 165.10 in restitution, but started with a total principal of $7.4 million. R. 36: Sent'g Hr'g Tr., PageID #: 467. It is unclear how the government came to its calculated loss amount.

(2016). There is a reasonable probability that this Court would have imposed a sentence at the low-end of Mr. Turnipseede's new Guideline range.

## IV.    Conclusion

Mr. Turnipseede's counsel provided ineffective assistance by failing to object to the calculated loss amount. This resulted in Mr. Turnipseede receiving a sentence above the proper Guideline range. Thus, this Court should hold an evidentiary hearing to resolve any factual disputes, grant him relief under 28 U.S.C. § 2255, and resentence Mr. Turnipseede using the proper Guideline range.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar:  0051928

*/s/ Abigail Akrong*
ABIGAIL AKRONG
Attorney at Law
Kentucky Bar: 100451
10 East Commerce Street, Suite 230
Youngstown, OH 44503
Phone: (330) 746-6399
E-mail: Abigail_akrong@fd.org